BLUMER et al., Respondents v. SCH. BD. OF BERESFORD
IND. SCH. DIST. NO. 68, UNION COUNTY, Appellant

(237 N.W.2d 655)

(File No. 11464. Opinion filed December 19, 1975)

Rehearing denied January 29, 1976

Charles Lacey and Patrick H. Lacey, Sioux Falls, for respondents.

Woods, Fuller, Shultz & Smith and John E. Simko, Sioux Falls, for appellant.

Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for amicus curiae, Associated Sch. Bds. of S.D.

WOLLMAN, Justice.

Plaintiffs, taxpayers and electors of Beresford Independent School District No. 68 (the district), appealed from the decision of the school board (the board) of the district adopting the budget for the district's 1973-74 fiscal year (hereinafter FY 74). Plaintiffs contended that the board should have reduced the tax levy for FY 74 by an amount corresponding to the cash balance remaining in the district's general fund on June 30, 1973. Likewise, plaintiffs contended that the board was without authorization to make any levy for the capital outlay fund for FY 74 inasmuch as a cash balance in excess of $200,000 remained in that fund on June 30, 1973. The trial court ruled that the board's tax levy for the general fund for FY 74 was null and void to the extent of the amount of the cash balance remaining in that fund on June 30, 1973; that the capital outlay fund levy was void in its entirety because there was no supporting purpose for such levy; and that the board could in its FY 74 budget include an item of not to exceed $35,000 as a carry-over fund to meet its operating costs as the same became due. We reverse.

Beresford Independent School District, in common with other school districts, operates on a fiscal year beginning on July

1 and ending on June 30. At the close of the district's 1972-73 fiscal year, there remained approximately $234,000 in the general fund and approximately $254,000 in the capital outlay fund.

The district's FY 74 budget included $743,300 for the general fund and $65,000 for the capital outlay fund. The budget set forth a tax request of $568,300 for the general fund and five mills for the capital outlay fund, which would have produced an estimated $115,000 in tax revenue. The budget as adopted did not reflect any allowance for the above described balances remaining in the general fund and the capital outlay fund.

SDCL 10-12-29 provides in part that, "The school district board of a school district shall by resolution adopt a levy in dollars sufficient to meet the school budget for the general fund of the district for the current fiscal school year * * *." At the time the budget in question was adopted, SDCL 13-11-2 provided in part that:

"* * * Before September first every school board shall approve a budget for the anticipated obligations of each fund for the school fiscal year. By resolution the school board shall adopt a levy in dollars sufficient to meet the school budget for all the funds. * * *"

In *Mallery v. Griffin,* 43 S.D. 71, 177 N.W. 818, and again in *Lasell v. Yankton County,* 67 S.D. 507, 295 N.W. 283, this court held that a county tax levy was void to the extent that it exceeded the statutory limitation set forth in § 6749 R.C. 1919 (now SDCL 10-12-8), which provided that:

"* * * Such taxes shall be based upon an itemized estimate of the county expenses for the ensuing year, which shall be included in the published proceedings of the board, and no greater levy of county tax shall be made upon the taxable property of any county than will be equal to the amount of such expenses, with an excess of five per cent of the same. * * *"

The trial court apparently applied the rationale of the *Mallery* and *Lasell* cases in holding that the amount levied by the board for FY 74 was unlawful to the extent that it exceeded the

amount necessary to raise the necessary funds to meet the estimated general fund requirements for that year after taking into account the approximately $234,000 cash balance available to the district at the close of the preceding fiscal year. The $35,000 carry-over balance allowed by the trial court is slightly less than five percent of the total general fund budget for FY 74.

Although we agree with the trial court that SDCL 13-11-2, as it then read, limited the board to adopting a levy sufficient to meet the school budget, we do not agree that, absent a specific statutory limitation on the amount of the levy such as was found in the Mallery and Lasell cases, the board was required to reduce the amount of the FY 74 levy by the exact amount remaining in the general fund at the close of the preceding fiscal year.

The testimony in the trial court revealed that because there is an overlap between the property tax year and a school district's fiscal year, it is a customary practice for school districts to budget in such a manner that they have on hand at the close of a fiscal year sufficient cash to meet the operating expenses of the district until the tax receipts for the current fiscal year are made available to the district. Property taxes are due and payable on January 1st of each year. SDCL 10-21-4. One-half of said taxes becomes delinquent if not paid by May 1, and the other half becomes delinquent if not paid by November 1. SDCL 10-21-23 and 10-21-24. Accordingly, a substantial portion of such taxes is paid in the months of April and October of each year.

The superintendent of the district testified that a school district receives very little tax money from July 1 until approximately November 15, and that the bulk of the tax money for that period comes in during the period from November 15 through November 30. He presented documentary evidence and testimony to the effect that it was necessary for the district to have a balance on hand on July 1 in the general fund to carry the district over so that it would not have to borrow money to meet its obligations until sufficient tax revenues were received in November of 1973.

The state auditor general testified that it is a general practice for school districts to carry enough cash over from one fiscal year

into the next to cover the anticipated expenditures until the districts receive the large amount of tax proceeds in November after the counties have collected the second half of that year's property taxes.

The $234,000 general fund balance carried over from the 1972-73 fiscal year to FY 74 '(characterized by the board as an "interim reserve") represented 31.5 percent of the FY 74 general fund budget. In comparison, the Flandreau, Dell Rapids, and Canton, South Dakota, school districts, all in the same general area as the Beresford School District and comparable in size in terms of total enrollment, provided interim reserves of 26.54 percent, 35.8 percent, and 33 percent of their respective budgets. The January 1973 Educational Terms Dictionary for Elementary and Secondary Education published by the South Dakota Department of Public Instruction stated under the entry "Surplus, General Fund":

> "The amount of money on hand in the general fund of the school district at the close of a school fiscal year in excess of:

> "1.  All accounts payable at the close of such school fiscal year.

> "2.  A balance on hand sufficient to meet the general fund expenditures of the current school fiscal year until taxes for such current school fiscal year have been collected.  *  *  *  At least one-half of the general fund expenditures for the previous school fiscal year should be available to meet the current expenditures of the school fiscal year and such amount of money should not be considered a surplus of the general fund." [1]

A graphic illustration of how the district would have fared financially had it carried over an interim reserve of only $35,000,

---

[1].  We do not mean to imply that this definition had any statutory basis or that it carried with it the authority of an administrative rule duly promulgated pursuant to clearly stated legislative authority.

as provided by the trial court's judgment, in comparison with the actual interim reserve of $234,000 is provided by the following table: [2]

BERESFORD PUBLIC SCHOOLS

GENERAL FUND FINANCIAL COMPARISONS

BALANCE ON HAND June 30, 1973 End of Fiscal Year $233,834.24

| Board Meeting Date | Actual Balance On Hand on Board Meeting Date | 1973-74 Expend- tures - Actual | 1973-74 Receipts Actual | Supposed Balance If We Carried Over $35,000 on June 30 |
|---|---|---|---|---|
| July 9 | $244,108.50 | $45,709.23 | $55,983.49 | $ 45,274.26 |
| August 13 | $257,013.05 | $42,094.06 | $54,998.61* | $ 58,178.81 |
| September 10 | $189,003.15 | $72,953.53 | $ 4,943.63 | $(-)9,831.09 |
| October 8 | $126,515.47 | $75,079.75 | $12,592.07 | $(-)72,318.77 |
| November 12 | $ 88,347.54 | $53,737.08 | $15,563.15 | $(-)110,486.70 |
| December 10 | $179,534.34 | $51,055.59 | $142,242.39 | $(-) 19,299.90 |
| January 14 | $171,203.34 | $79,180.63 | $ 70,849.63 | $(-) 27,630.90 |
| February 11 | $140,736.14 | $58,354.77 | $27,887.57 | $(-) 58,098.10 |

*This is the first year we have received the first State Aid payment in August ($39,436). Past years we received the first State Aid payment in mid November. If we had not received the State Aid payment until mid November this would have reduced the Balances on hand by that amount ($39,436.00) each month August - November 1973.

2. In fairness to the trial court, it should be stated that this table was not presented at the original trial but was first submitted as an exhibit in support of the board's motion to reopen the case after the trial court had issued its memorandum decision. Because the trial court presumably studied this exhibit in ruling upon the motion to reopen (the motion was denied), and because counsel stipulated that the exhibit should constitute a part of the settled record, we are reproducing it here. Counsel for plaintiffs have not challenged the accuracy of the figures set forth in the exhibit.

Closely analogous to the instant case was the situation that existed in the case of *C.R.T. Corp. v. Board of Education,* 172 Neb. 540, 110 N.W.2d 194. There, as here, a challenge was made to the levy on the ground that the school board had failed to take into consideration the balance on hand at the end of the school year 'when determining the budget needs for the following year. Although we recognize that the amount carried over in the *C.R.T.* case was only some six percent of the following year's budget, as compared to 31.5 percent in the instant case, we believe that the following language from that case is instructive:

> "As is clearly apparent in a situation such as this the needs are not capable of exact ascertainment. In the very nature of things and as the pertinent statutes declare there may only be estimates, which of course negative any thought that accuracy must be attained. The true test is that there shall be a reasonable and approximate estimate and determination made in the light of the known and reasonably ascertainable facts and also in the light of known and fairly anticipated conditions." 172 Neb. at 546, 110 N.W.2d at 200.

We conclude that when measured by the budget practices in comparably seized school districts in the area and those recommended by the state superintendent of public instruction, and in the light of the demonstrated fact that the district would have been in a deficit situation for several months during FY 74 had the $234,000 carry-over balance not been available to it, the board acted reasonably in carrying over the $234,000 balance and in not reducing the levy by a corresponding amount for FY 74. In upholding the board's decision in this respect, we are following the pronouncement regarding the matter of judicial interference with the discretionary power of a school board set forth in *Dahl v. Independent School District No. 2,* 45 S.D. 366, 187 N.W. 638:

> "To be sure, a board of education has only such powers as are expressly given to it or as result by fair implication from the powers expressly granted, and can enter into such contracts only as it is empowered expressly or impliedly to make. It cannot engage in business or make contracts outside of its functions touching education.

Such boards are usually given extensive discretionary powers in order that they may be assisted in carrying out the general school system adopted by the state and thus promote the cause of education. The courts will not interfere with such boards in the exercise of this discretion, except to prevent an abuse of it. The action of a board of education taken in the reasonable exercise of its discretion and without fraud is not subject to judicial review." 45 S.D. at 369, 187 N.W. at 639.

■ There is no evidence of fraud on the part of the board, and we conclude that the board did not violate the provisions of SDCL 13-11-2 in exercising its discretion to use the $234,000, balance in the general fund as an interim reserve to meet the district's financial needs during FY 74 rather than by reducing the general fund levy by that amount and thereby insuring that the district would soon be in a deficit situation.[3] It must be said that from the testimony at the trial and the various allegations contained in the affidavits and briefs that this litigation is yet another chapter in the continuing dispute among the electors of the district concerning the building of additional school facilities. Cf. *Stene v. School Board of Beresford Ind. School Dist. No. 68,* 87 S.D. 234, 206 N.W.2d 69.

■ What we have said above concerning the levy for the general fund applies generally to the levy for the capital outlay fund, which the trial court held void because of a lack of evidence that the board had any plans for the utilization of the funds raised by the capital outlay levy for FY 74.

At the time the 1973-74 budget was adopted, SDCL 13-16-7 provided in part that:

3.   We note that Chapter 132, Laws of 1975 amended SDCL 13-11-2 by adding the provision that: "Such budget may include an amount to provide cash flow funding according to guidelines prescribed by the auditor general." Moreover, prior to this addition to SDCL 13-11-2, there was statutory recognition, by implication at least, that school districts are authorized to levy in such a manner as to create reasonable surpluses. SDCL 13-16-26 provides that all or any part of a surplus of any school district fund, with two exceptions, may be transferred to any other school district fund. SDCL 13-11-4, as amended by § 77, Ch. 128, Laws of 1975, provides that, "Any unobligated surplus fund in the treasury of the school district at the end of the fiscal year may be appropriated to the payment of a judgment."

"The school board of any school district of this state may at its discretion authorize an annual levy of a tax not to exceed five mills on the assessed valuation of the district for the capital outlay fund for fixed assets * * *".

Although the balance carried over in the capital outlay fund from the 1972-73 fiscal year totaled some $254,000, and the five mill capital outlay levy for FY 74 was expected to generate $115,000, of which only $65,000 was budgeted for expenditure, we believe that the board properly exercised its statutorily granted discretion to levy the five mills for FY 74.

Although the record is not as clear on this point as might be desired, there was testimony that at the time the board was considering the FY 74 budget it was considering the matter of completing a classroom facility, the construction of which had commenced the preceding year but which was halted by the litigation described in the *Stene* case, supra. Indeed, one of the principal problems facing the board was the fact that because construction costs had risen during the delay resulting from the litigation the contractors had refused to complete the project in accordance with the original contract figures, with the result that the original plans could not be complied with because of the higher costs. If anything can be gleaned from the record in this case, it is the fact that the board was struggling conscientiously to try to meet the need of the district for additional classroom facilities. A witness for plaintiffs, one Richard Stene, testified that bond issues for the construction of new facilities had been presented by the board to the electors of the district in October of 1971, March of 1972, and in the fall of 1973, all of which failed to receive requisite sixty percent majority of the vote. Mr. Stene testified that the group of electors with whom he was allied had proposed a classroom facility to the board that the group considered would provide adequate facilities for the children within the district. In short, it is clear from the record that the board was aware that there was a need for additional classroom facilities and that at the time they were considering the FY 74 capital outlay budget the members of the board had plans, albeit perhaps inchoate, for utilizing the capital outlay fund for classroom facilities during FY 74. It is true that after the budget

was adopted the board decided against trying to complete the litigation-delayed project, but we think that the trial court exercised a too stringent requirement for plans when it viewed in hindsight the failure of the board to have specific plans at the time it adopted the capital outlay portion of the FY 74 budget.

The judgment is reversed and the case is remanded to the circuit court with directions to dismiss the appeal.

All the Justices concur.